## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHEA BENNETT<br>342 S. Main Street<br>Rochester, Michigan 48307<br><br>CARLA BRANTLEY<br>342 S. Main Street<br>Rochester, Michigan 48307<br><br>And<br><br>FANTA PATTON<br>342 S. Main Street 48307<br>Rochester, Michigan 48307<br><br>*On Behalf of Themselves and All<br>Other Similarly Situated Individuals*<br><br>PLAINTIFFS[1],<br><br>   v.<br><br>LL-T SHOW BAR, INC.<br>1410 Saginaw Street<br>Flint, Michigan 48503<br><br>SERVE:  Craig H. Hatch<br>3157 Gaslight Drive<br>Bay City, Michigan 48706<br><br>And<br><br>CLUB 69, LLC<br>1410 Saginaw Street<br>Flint, Michigan 48503<br><br>SERVE:  John Frederick, Sr.<br>25245 Circle Drive, Suite 69<br>Southfield, Michigan 48075<br><br>DEFENDANTS. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*   Case No.:<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

[1] To avoid retaliation, Plaintiffs have used the mailing address of their attorneys.

## CLASS AND COLLECTIVE ACTION COMPLAINT

1. This is a class and collective action brought by Plaintiffs Chea Bennett, Carla Brantley, and Fanta Patton (together, "Plaintiffs") against Defendants Club 69, LLC d/b/a Club 69 and/or LLT Show Bar ("Club 69"), LL-T Show Bar, Inc. d/b/a Club 69 and/or LLT Show Bar ("Show Bar") (together referred to as "Defendants").

2. The Plaintiff class and collective is composed of female employees who, during the relevant time period of April 2016 through the date of judgment in this case ("the relevant period"), worked as exotic dancers for Defendants and were denied their fundamental rights under applicable state and federal laws.

3. Specifically, Plaintiffs complain that Defendants misclassified Plaintiffs, and all other members of the Class and Collective, as "independent contractors" at all times in which they worked as dancers at Defendants' Flint, Michigan based gentlemen's club doing business as LL-T Show Bar and later as Club 69.

4. As a result, Defendants failed to pay Plaintiffs, and all other members of the class and collective, minimum wage compensation they were entitled to under the Federal Fair Labor Standards Act ("FLSA") and the Michigan Minimum Wage Law ("MMWL").

5. Plaintiffs bring this class and collective action against Defendants seeking damages, back-pay, restitution, liquidated damages, prejudgment interest, reasonable attorney's fees and costs, and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## PARTIES AND JURISDICTION

6. Plaintiffs are adult residents of Michigan and Texas.

7. Plaintiffs hereby affirm their consent to participate as plaintiffs and class representatives

in a class and collective action under the FLSA and the MMWL.

8.     Show Bar is or was a corporation formed under the laws of the State of Michigan that operated as a gentlemen's club under trade names LL-T Show Bar and later Club 69, and was known to the public as a gentlemen's club featuring female exotic dancers at the address 1410 Saginaw Street, Flint, Michigan 48503.

9.     Club 69 is a limited liability company formed in the State of Michigan that previously operated as LL-T Show bar and currently operates as Club 69, a gentlemen's club featuring female exotic dancers at the address 1410 Saginaw Street, Flint, Michigan 48503.

10.    During the relevant period, Show Bar entered into a buy-sell agreement with Club 69 and, thereafter, Show Bar ceased operations and Club 69 commenced operations and ownership of the same gentlemen's club featuring female exotic dancers at the address 1410 Saginaw Street, Flint, Michigan 48503.

11.    Club 69 operates as a legal successor and continuation of Show Bar because (i) the businesses both operate or operated as a gentlemen's club featuring female exotic dancers; (ii) the businesses both provide/offer the same or substantially similar food, spirituous beverages, and female exotic dancer entertainment; (iii) the businesses provide nearly identical female exotic dancer entertainment to substantially similar customers; (iv) the businesses operate at an identical physical location; (v) the businesses operate under the same or nearly identical operating hours; (vi) the businesses subject the female exotic dancer workforce at the club to the same or substantially similar rules, pay structure, and independent contractor misclassification; and (vii) the businesses operate with the same or nearly identical employees (including female exotic dancers) and management.

12.     At the time of the buy-sell agreement between the Defendants, Club 69 had notice that Show Bar (i) misclassified its exotic dancers as independent contractors; (ii) did not pay any wages to its exotic dancers; (ii) did not keep or maintain time records or other employment records for its exotic dancers.

13.     At the time of the buy-sell agreement, Club 69 had actual or constructive knowledge of lawsuits in Michigan and across the country filed by current and former exotic dancers for (i) misclassification as independent contractors and (ii) failure of the clubs to pay minimum wage compensation and otherwise complying with state and federal labor and employment laws.

14.     At the time of the buy-sell agreement, Club 69 had actual or constructive knowledge of potential wage and hour legal claims belonging to Plaintiffs and other misclassified exotic dancers at the club against the club.

15.     At the time of the buy-sell agreement, Club 69 had actual or constructive notice that it, as a successor entity, would or could be potentially liable as a legal successor for Federal and State wage and hour violations perpetrated by Show Bar against Plaintiffs and other similarly situated female exotic dancers.

16.     During the period relevant, both Defendants qualified as Plaintiffs' employer and the employer of all other exotic dancers at the club, within the meaning of the FLSA and MMWL.

17.     During the relevant period, both Defendants had gross revenue and sales exceeding $500,000.00, sold beer, wine, spirituous beverages, colas, and food that passed in interstate commerce and otherwise qualified as an "enterprise engaged in commerce" under the FLSA.

18.     This Court has personal jurisdiction over the Defendants, has "federal question" subject matter jurisdiction of the claims pursuant to 28 U.S.C. § 1331, has supplemental jurisdiction over the interrelated MMWHL state law claims, and constitutes proper venue pursuant to 28

U.S.C. § 1391.

## FACTS

19. Ms. Bennett was employed by Defendants as an exotic dancer at Defendants' LL-T Show Bar and Club 69 gentlemen's club in Flint, Michigan, for the period of about 1997 until about November 2018.

20. Ms. Brantley was employed by Defendants as an exotic dancer at Defendants' LL-T Show Bar and Club 69 gentlemen's club in Flint, Michigan, for the period of about 2001 through about November 2018.

21. Ms. Patton was employed by Defendants as an exotic dancer at Defendants' LL-T Show Bar and Club 69 gentlemen's club in Flint, Michigan, for the period of about 2011 through about 2017.

22. During the period of Plaintiffs' employment, the number of shifts each Plaintiff worked varied from week to week.

23. During the period of Plaintiffs' employment, the exact number of hours each Plaintiff worked varied from week to week.

24. On information and belief, Defendants have possession of time and/or sign in "house fee" payment records for each Plaintiff and all other exotic dancers employed by Defendants during the relevant period.

25. At all times, Defendants had actual knowledge of all hours each Plaintiff and all other exotic dancers worked each shift through sign in or tip-in sheets, DJ records, and shift-managers monitoring and supervising Plaintiffs' work duties and the work duties of other exotic dancers at the club.

26. At no time during Plaintiffs' period of employment did Defendants ever pay Plaintiffs or

any other exotic dancers any wages for hours that Plaintiffs and other exotic dancers worked each week.

27.     At all times relevant, Defendants totally failed to pay wages or any kind of compensation to Plaintiffs and all other exotic dancers for work duties performed.

28.     At all times relevant, Defendants misclassified Plaintiffs and all other exotic dancers at LL-T Show Bar and Club 69 as independent contractors when these individuals should have been classified under the FLSA and MMWL as employees.

29.     At all times, Defendants controlled all aspects of the job duties Plaintiffs and all other exotic dancers performed inside the LL-T Show Bar and Club 69 gentlemen's club through employment rules and workplace policies.

30.     At all times, Defendants controlled the method by which Plaintiffs and all other exotic dancers could earn money at the club by establishing dance orders, setting customer prices on private and semi-private exotic dances, and setting private and semi-private dance specials and promotions for customers.

31.     At all times, Defendants required Plaintiffs and other exotic dancers to perform private and semi-private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants.

32.     Defendants hired Plaintiffs and all other exotic dancers and had the ability to discipline them, fine them, fire them, and adjust their work schedules.

33.     Defendants, through supervisors and managers, supervised the duties of Plaintiffs and all other exotic dancers to make sure their job performance was of sufficient quality.

34.     Defendants conducted initial interviews and vetting procedures for Plaintiffs and other exotic dancers and, at Defendants' sole discretion, Defendants could deny any Plaintiffs or any

other dancer access or ability to dance and/or work at LL-T Show Bar and/or Club 69.

35.     At all times, Defendants had the right to suspend or send Plaintiffs or other exotic dancers home and away from the club if Plaintiffs or other dancers violated rules or policies or if Defendants, at its discretion, did not want any Plaintiff or any other dancer at the club.

36.     As a condition of employment with Defendants, Plaintiffs and other dancers were not required to have or possess any requisite certification, education, or specialized training.

37.     At all times relevant, Defendants were in the business of operating a night club featuring exotic dancers and at all times it was the job duty of Plaintiffs and each other exotic dancer to perform as exotic dancers for Defendants' customers.

38.     In addition to failing to pay Plaintiffs and all other exotic dancers any wages for hours worked, Defendants required Plaintiffs and all other exotic dancers to pay Defendants a house fee or kickback of $25.00-$50.00 or more for each shift Plaintiffs and the other exotic dancers worked.

39.     At all times during the relevant period, without legal excuse or justification, Defendants regularly and customarily kept and/or assigned to management tips and gratuities Plaintiffs and other exotic dancers received from customers.

40.     For at least the past twenty (20) years, gentlemen's clubs like LL-T Show Bar and Club 69 have been publically sued for misclassifying exotic dancers as independent contractors and failing to pay minimum wage compensation to exotic dancers as required by the FLSA and state wage and hour laws.

41.     On information and belief, Defendants, and their ownership and management, had actual or constructive knowledge that for at least the past twenty (20) years, there have been ongoing or past litigation by exotic dancers against gentlemen's clubs like LL-T Show Bar and Club 69 in

which the exotic dancers challenged the so-called independent contractor classification and otherwise sought to recover unpaid wages and damages under the FLSA state wage and hour laws.

42. On information and belief, Defendants, and their ownership and management, had actual or constructive knowledge that for at least the past twenty (20) years, courts in Michigan and across the country in ongoing or past litigation have found that exotic dancers like Plaintiffs and other exotic dancers at LL-T Show Bar and Club 69 were employees and not independent contractors and were owed minimum wage compensation under the FLSA and the MMWL.

43. For the entire time period relevant to this action, Defendants have had actual or constructive knowledge that Defendants misclassified Plaintiffs and other exotic dancers at the LL-T Show Bar and Club 69 as independent contractors instead of as employees and that Defendants' failure to pay wages and charging unlawful kickbacks to Plaintiffs and other exotic dancers was in direct violation of the FLSA and the MMWL.

## CLASS ALLEGATIONS

44. Plaintiffs bring this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

45. The Rule 23 Class is defined in this matter as all individuals, who at any time during the relevant time period, worked as an exotic dancer at any of the , but were designated as an independent contractor and therefore, were not paid minimum wage compensation as required by the MMWHL (hereinafter, "the Class").

46. On information and belief, the Class are believed to exceed one hundred (100) current and former exotic dancers at LL-T Show Bar and Club 69 and are therefore so numerous that joinder of all members is impracticable.

47. There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members, including, but not limited to:

   i. Whether Defendants violated the MMWL by classifying all exotic dancers at the LL-T Show Bar and Club 69 as "independent contractors," as opposed to employees, and not paying them any minimum wages;

   ii. Whether Defendants unlawfully required class members to split their tips with Defendants;

   iii. Whether the monies given to dancers by patrons when they perform private and semi-private dances are gratuities or "service fees."

   iv. Whether Defendants violated the MMWL; and

   v. The amount of damages and other relief (including all applicable civil penalties and liquidated damages) Plaintiffs and the Class are entitled to.

48. Plaintiffs' claims are typical of those of the Class.

49. Plaintiffs, like other members of the Class, were misclassified as an independent contractors and denied their rights to wages and gratuities under the MMWL.

50. Defendants' misclassification of Plaintiffs was done pursuant to a common business practice which affected all Class members in a similar way.

51. The named Plaintiffs and the undersigned counsel are adequate representatives of the Class.

52. Given Plaintiffs' loss, Plaintiffs have the incentive and are committed to the prosecution of this action for the benefit of the Class.

53. Plaintiffs have no interests that are antagonistic to those of the Class or that would cause them to act adversely to the best interests of the Class.

54.     Plaintiffs have retained counsel experienced in class and collective actions and, in particular, litigation of wage and hour disputes.

55.     This action is maintainable as a class action under Fed. R. Civ .P. 23(b)(1), 23(b)(2), and 23(c)(4) because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

56.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

## COLLECTIVE ACTION ALLEGATIONS

57.     Plaintiffs are pursuing this lawsuit as collective action under FLSA Section 216(b) on behalf of themselves and all other similarly situated individuals who at any time during the relevant time period worked for Defendants as an exotic dancer and was designated as an independent contractor and was not paid minimum wage compensation as required by the FLSA (hereinafter, "the Collective").

58.     Plaintiffs and the members of the Collective are similarly situated because each were (1) improperly classified as independent contractors; (2) were not paid any wages by Defendants for hours worked; (3) were victims of tip theft whereby Defendants kept and/or assigned to management their tips and gratuities received from customers; (4) were required to pay per-shift house fee kickback to Defendants for each shift worked; and (5) were not paid wages at or above the Federal Minimum Wage of $7.25 for each hour worked.

59.     Plaintiffs' damages are substantially similar to other members of the Collective because,

under the FLSA, each are owed (1) a return of all house fee kickback payments made to Defendants for each shift worked; (2) reimbursement of all tips and gratuities taken and/or assigned by Defendants and/or Defendants' management; (3) payment for all hours worked in an amount equal to the Federal Minimum Wage of $7.25 per hour; plus (4) statutory liquidated damages as provided by Federal law for Defendants' failure to pay minimum wage compensation as required by the FLSA.

60. On information and belief, Defendants have employed at least one hundred (100) current and former exotic dancers at Defendants' LL-T Show Bar and/or Club 69 in the past three (3) years.

61. On information and belief, Defendants are in custody, possession, and control of identifying records relating to all current and former exotic dancers employed by Defendants at Defendants' LL-T Show Bar and/or Club 69 in the past three (3) years.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FLSA
(Failure to Pay Statutory Minimum Wages)

62. Plaintiffs hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein.

63. The FLSA required Defendants to pay Plaintiffs and other similarly situated exotic dancers at an hourly rate at least equal to the Federal Minimum Wage.

64. The FLSA required that Defendants allow Plaintiffs and other similarly situated exotic dancers to keep all tips and gratuities received from customers.

65. As set forth above, Defendants failed to pay Plaintiffs and other similarly situated exotic dancers at hourly rates in compliance with the FLSA Federal Minimum Wage requirements.

66. Without legal excuse or justification, Defendants kept and/or assigned to management tips and gratuities received by Plaintiffs and other exotic dancers and belonging to Plaintiffs and other exotic dancers.

67. Defendants' failure to pay Plaintiffs and other similarly situated exotic dancers as required by the FLSA was willful and intentional and was not in good faith.

## COUNT II
## VIOLATION OF MICHIGAN MINIMUM WAGE LAW OF 1964
(Failure to Pay Statutory Minimum Wage)

68. Plaintiff hereby incorporates all of the preceding paragraphs by reference as if fully set forth herein.

69. The MMWL required Defendants to pay Plaintiffs and other similarly situated exotic dancers at an hourly rate at least equal to the Michigan Minimum Wage.

70. The MMWHL required that Defendants allow Plaintiffs and other similarly situated exotic dancers to keep all tips and gratuities received from customers.

71. As set forth above, Defendants failed to pay Plaintiffs and other similarly situated exotic dancers at hourly rates in compliance with the MMWL Michigan Minimum Wage requirements.

72. Without legal excuse or justification, Defendants kept and/or assigned to management tips and gratuities received by Plaintiffs and other exotic dancers and belonging to Plaintiffs and other exotic dancers.

73. Defendants' failure to pay Plaintiffs and other similarly situated exotic dancers as required by the MMWL was willful and intentional and was not in good faith.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of those similarly situated, pray for relief as follows:

A. Permitting Plaintiffs' Class claims under the MMWL to proceed as a Class Action under Federal Rule of Civil Procedure 23;

B. Permitting this case to proceed as a collective action under § 216(b) of the FLSA and ordering notice to the putative plaintiffs at the earliest opportunity to ensure their claims are not lost to the FLSA statute of limitations;

C. Judgment against Defendants for failing to pay free and clear minimum wage compensation to Plaintiffs and other similarly situated individuals as required by the MMWL; Judgment against Defendant for failing to pay free and clear minimum wage compensation to Plaintiffs and other similarly situated individuals as required by the FLSA;

D. Judgment against Defendants for unlawfully taking and/or assigning tips and gratuities belonging to Plaintiffs and other similarly situated individuals;

E. Judgment that Defendants' violations of the MMWL minimum wage requirements were not the product of good faith on the part of Defendants;

F. Judgment that Defendants' violations of the FLSA minimum wage requirements were not the product of good faith on the part of Defendants;

G. Judgment that Defendants' violations of the MMWL minimum wage requirements were willful;

H. Judgment that Defendants' violations of the FLSA minimum wage requirements were willful;

I. An award to Plaintiffs and those similarly situated in the amount of all free and clear unpaid wages found to be due and owing to Plaintiffs and each similarly situated individual;

J. An award to Plaintiffs and those similarly situated in the amount of all tips and gratuities unlawfully taken and/or assigned by Defendants and/or Defendants' management;

K. An award of statutory liquidated damages in amounts prescribed by the MMWL;

L. An award of statutory liquidated damages in amounts prescribed by the FLSA;

M. An award of attorneys' fees and costs to be determined by post-trial petition;

N. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

O. Such further relief as may be necessary and appropriate.

                                          Respectfully submitted,

Dated: April 12, 2019                      /s/ Clifford Neubauer Jr.
                                          Clifford Neubauer, Jr.
                                          Erskine Law
                                          342 S. Main Street
                                          Rochester, Michigan 48307
                                          (248) 601-4499 (ph)
                                          Email: cneubauer@erskinelaw.com

                                          Gregg C. Greenberg, MD Fed. Bar No. 17291
                                          (To Be Admitted Pro Hac Vice)
                                          Zipin, Amster & Greenberg, LLC
                                          8757 Georgia Avenue, Suite 400
                                          Silver Spring, Maryland 20910
                                          (301) 587-9373 (ph)
                                          Email:  GGreenberg@ZAGFirm.com

                                          *Counsel for Plaintiffs and the Class / Collective*